UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEFFREY R. GOODWIN, in his capacity as trustee of the DOROTHY M. GOODWIN TRUST,<br><br>**Plaintiff,**<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A., d/b/a CHASE BANK,<br><br>**Defendant.** | Civil Action No.:<br>2:23-cv-00438-WJM<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court upon Defendant JP Morgan Chase Bank's ("Defendant" or "Chase") Motion to Dismiss Plaintiff Jeffrey R. Goodwin's, in his capacity as trustee of the Dorothy M. Goodwin Trust ("Plaintiff"), Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) *See* ECF Nos. 20, 21. The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendant's Motion to Dismiss is **GRANTED**.

I.  BACKGROUND[1]
    A. Facts

The Court assumes familiarity with the facts of this matter, as discussed in the Court's previous Opinion on September 28, 2023, and will only discuss the relevant facts below. ECF No. 16. Plaintiff Jeffrey Goodwin is the current trustee of the Dorothy M. Goodwin Trust, who was the account owner of a savings and checking account in a Chase Bank located in Jupiter, Florida.[2] *See* Am. Compl. at ¶¶ 4, 9. Ms. Goodwin's accounts totaled between approximately $240,000 in 2009 and $158,000 in 2017. *Id* at ¶ 13. The

---

[1] Both parties also agree that Florida law controls. *See* Am. Compl. at ¶ 10; *see also* Def. Mot. to Dismiss at 1, ECF No. 21.

[2] On or about March 22, 2021, Dorothy Goodwin resigned as Trustee given her poor eyesight and difficulty managing her affairs. Am. Compl.. at ¶ 4. Jeffrey Goodwin was the named successor. *Id.* Dorothy Goodwin, age 94, died on May 28, 2021, leaving Jeffrey Goodwin as Trustee and sole beneficiary of the Trust. *Id.* Plaintiff alleges that during the relevant period in which Ms. Goodwin's accounts were depleted, Ms. Goodwin was no longer driving a car, used a walker, falling frequently, did not electronically bank, did not use ATM machines, did not leave her house, and had poor eyesight, competency, and memory. *Id.* at ¶ 21.

funds stayed at a similar level throughout 2018 and most of 2019, however, by 2020 and the beginning of 2021, both accounts had been drastically depleted. *Id.*

Sometime in August of 2019, an individual who was driving Ms. Goodwin to the supermarket, Dennis Alexander, used Ms. Goodwin's debit card for numerous unauthorized transactions. *Id.* at ¶ 15. Once she discovered the misuse, Ms. Goodwin reported it to Chase, filed a police report, confronted Mr. Alexander, and cancelled her Chase debit card.[3] *Id.* After Ms. Goodwin and her son, Donald Goodwin, had a discussion with Mr. Alexander, Ms. Goodwin decided not to pursue charges against Mr. Alexander and, moving forward, her interactions with him were minimal. *Id.* However, Mr. Alexander's son, Christopher, began driving Ms. Goodwin to the supermarket until she no longer left the house due to the Covid-19 pandemic. *Id.* Ms. Goodwin made two grocery purchases on her Chase debit card in November of 2019 and did not use her card again to make regular food purchases, except in June of 2020 when she made purchases at Publix and Walmart. *Id.* at ¶ 16. Plaintiff asserts that Dennis Alexander, again, took possession of Ms. Goodwin's debit card without her permission or knowledge. *Id.* Monies were then withdrawn electronically from Ms. Goodwin's savings account as well as transferred into her checking account to be spent with her debit card until both funds were depleted. *Id.* at ¶ 20.

On February 28, 2021, Plaintiff Jeffrey Goodwin reported to Defendant, by phone, that Ms. Goodwin's card was stolen and there were unauthorized transactions that appeared on Dorothy's January-February 2021 statement.[4] *Id.* at ¶ 17. That same day, Ms. Goodwin's granddaughter, Michelle Laster, filed a police report asserting that "there were no credit or debit cards in Dorothy's wallet, that checks issued by another bank, Brightstar Credit Union, were missing from Ms. Goodwin's checkbook, that someone used Dorothy's Visa card and spent the $15,000 limit, and that there were unauthorized expenditures on her Chase debit card."[5] *Id.* at ¶ 18. Ms. Goodwin's checking account with Defendant was overdrawn by $10.00. *Id.* Plaintiff lists dozens of unauthorized transactions and cash withdrawals from Ms. Goodwin's accounts between 2018 and 2021 totaling approximately $151,000.00. *Id.* at ¶¶ 24-56, 80. Most of the transactions were for goods or services that Dorothy never purchased or frequented, such as fishing gear, alcohol, pet supplies, hardware stores, and gas stations. *Id.* at ¶¶ 47, 55, 59-60. Sometime in March of 2021, Plaintiff secured control of the Goodwin Trust and called Defendant to report the unusual activity on his mother's account on the January – February 2021 statement, shut down the debit card, and request information about the status of, and past transactional activity on,

---

[3] A new card was issued to Ms. Goodwin in November of 2019. *Id.* at ¶ 15.
[4] Beyond this February 2021 challenge, which was done by Plaintiff on behalf of Ms. Goodwin, Ms. Goodwin only ever challenged transactions from the September to October 2019 statements, which Defendant's claims department denied. *Id.* at ¶¶ 45-46.
[5] Sometime in February of 2021, Ms. Laster found the January 23, 2021 to February 19, 2021 Chase bank statement in Dorothy's mailbox and determined due to their nature that all the expenditures on the statement were fraudulently made. *Id.* at ¶ 18. The Chase checking account was also overdrawn by $10. *Id.*

2

the account.[6] *Id.* at ¶ 68. In early April of 2021, Plaintiff attempted to secure copies of his mother's checks and bank statements to determine the extent of the theft, filed a report with the Jupiter Sheriff's Office, and "[made] a specific Demand on Chase bank[7]." *Id.* at ¶ 71.

Plaintiff alleges Defendant failed to notice the abnormal activity on Ms. Goodwin's accounts and failed to contact her or Adult Protective Services. *Id.* at ¶ 20. Plaintiff alleges that an analysis "of the Chase account statements from January 2018 through August 2019 indicates a pattern of expenditures with the use of the Goodwin Trust Chase debit card primarily, if not exclusively, for the purpose of two to four transactions per month at Publix grocery store. . . [a] significant departure from such pattern should and would have been noticed by any reasonable person."[8] *Id.* at ¶ 23. Plaintiff asserts Defendant failed to file a report with the "appropriate State Agency as it was required to do pursuant to Florida's Adult Protective services Act ("FAPSA"), Fla. Stat §§ 415.101-113." *Id.* at ¶ 57.

### B. Procedural Background

Plaintiff filed its two-count Amended Complaint against Defendant on November 6, 2023. ECF No. 20. Count One alleges breach of contract based on Defendant's Deposit Account Agreement and Privacy Notice ("DAA"). *Id.* at ¶¶ 81-94. Specifically, (1) Defendant failed to act in good faith and with reasonable care; (2) Defendant failed to shut down Ms. Goodwin's account; (3) Defendant failed to decline or prevent transactions from Ms. Goodwin's account; (4) Defendant failed to refuse, freeze, or delay withdrawals or transfers from Ms. Goodwin's account; and (5) Defendant failed to suspect Ms. Goodwin may be the victim of a fraud, scam, or financial exploitation. *Id.* at ¶¶ 83, 92.

Count Two alleges the Defendant was negligent in failing to exercise ordinary care when processing debit and checking transactions on Dorothy Goodwin's accounts due to her banking history of limited purchases and the Defendant's alleged knowledge of her status as a 94-year-old widow living alone. *Id.* at ¶¶ 95-109. Plaintiff newly alleges: (1) Defendant owed a duty of care to Ms. Goodwin via "Know Your Customer" laws; (2) Defendant had a duty to exercise ordinary care when processing debit and checking transactions; and (3) Defendant violated its duty to exercise good faith and ordinary care or satisfy its heightened duty to monitor Ms. Goodwin's account pursuant to FAPSA and "failed to effect federal laws and related internal policies requiring it to detect, report, and stop suspicious activity." *Id.* at ¶¶ 99, 101, 107.

---

[6] At some point in the following weeks, Plaintiff spoke to a Chase Bank employee at a New York branch who jokingly asked Plaintiff if "his then 94-year-old mother liked to drink, since the statements, she noted, indicated purchases at a wine store in Jupiter." *Id.* at ¶ 70. The employee also stated that the debit card "should have been shut down." *Id.*

[7] Plaintiff also alleges he sent Defendant a formal demand to which he has not received a response. *Id.* at ¶¶ 77-79.

[8] Plaintiff points to Centennial Bank, another bank that serviced Ms. Goodwin, which "[b]ased on an eerily similar pattern of increased activity on Ms. Goodwin's debit card. . . shut her debit card down as of June 31, 2020." *Id.* at ¶ 58.

3

Defendant filed its Motion to Dismiss on November 27, 2023. ECF No. 21. Plaintiff filed its opposition on January 2, 2024, ECF No. 24, and Defendant filed its reply on January 23, 2024, ECF No. 27. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the diverse citizenship of the parties and an amount in controversy exceeding $75,000.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The movant bears the burden of showing that no claim has been stated. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under FRCP 12(b)(6), "all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court need not accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a 12(b)(6) motion, the Court is ordinarily limited to the facts as alleged in the complaint, the exhibits attached thereto, and matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1996 (3d Cir. 1993). The Court may, however, look outside the pleadings and also consider "document[s] integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Asbestos Prod. Liability Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III. DISCUSSION
### A. Breach of Contract

Count One alleges Defendant failed to act in good faith and with reasonable care, failed to shut down Ms. Goodwin's account, failed to decline or prevent transactions from Ms. Goodwin's account, failed to refuse, freeze, or delay withdrawals or transfers from Ms. Goodwin's account, and failed to suspect Ms. Goodwin may be the victim of a fraud, scam, or financial exploitation as is required by the DAA. *Id.* at ¶¶ 83, 92. Defendant argues Plaintiff's claim under Count One must fail because: (1) Plaintiff concedes Ms. Goodwin failed to comply with the DAA by not reporting any unauthorized transactions within 60 days of receipt of a corresponding bank statement; (2) Plaintiff fails to adequately allege that Defendant violated any provision of the DAA; and (3) Plaintiff fails to point to any

provision of the DAA obligating Chase to monitor and identify suspicious activity or unauthorized transactions or obligating Defendant to reimburse customers where the customer fails to safeguard an account, monitor monthly bank statements, or reports any fraudulent activity. *See* Def. Mot. to Dismiss at 9-16, ECF No. 21.

Plaintiff opposes dismissal of Count One arguing that Plaintiff need not satisfy a condition precedent, specifically, requiring Ms. Goodwin to notify Defendant of unauthorized activity on her account within 60 days is unconscionable as applied to Ms. Goodwin. *See* Pl. Opp. at 18-21, ECF No. 24. Alternatively, Plaintiff argues the provision is inapplicable because it is ambiguous and must be construed in Plaintiff's favor. *Id.* at 21. Ms. Goodwin was required to notify Defendant of any suspected "errors" within 60 days of receiving the "first statement on which the error appeared," but Plaintiff argues it has not alleged Defendant made errors on any statement, rather, "Plaintiff has alleged Chase illicitly allowed [Ms. Goodwin's] life savings to be fraudulently and otherwise illegally drained from [Ms. Goodwin's] Chase account." *Id.* at 22. Furthermore, Plaintiff argues the DAA establishes mandatory obligations, which Defendant breached. For instance, Defendant has the "right. . . to refuse to authorize any transaction. . . when [it] reasonably believes there may be fraudulent, suspicious, or illegal activity." *See* Def. Ex. (A), at Section III(D)(2)(d). Plaintiff then inaccurately cites the DAA as stating Defendant "will 'decline or prevent transactions to or from [a customer like Dorothy's] account. . . to protect you or us, or to comply with legal requirements.'" Pl. Opp. at 23. Plaintiff further argues that, despite the language in the provisions being permissive, given the context of alleged fraudulent or illegal conduct, the provisions are mandatory. *Id.* at 23-24. In its reply, Defendant argues the provisions of the DAA do not confer an affirmative obligation on Defendant to monitor Ms. Goodwin's account. Def. Reply at 2-4. Defendant replies that Plaintiff does not dispute its failure to comply with the 60-day notice under the DAA. *Id.* at 5.

To succeed on a breach of contract claim, a plaintiff must establish "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). Defendant is correct in asserting that "[a] complaint that fails to specify the contract provision that was breached is subject to dismissal." *Schuller v. Geovera Speciality Ins. Co.*, No. 8:16-cv-2606-T-35AAS, 2017 U.S. Dist. LEXIS 233983, at *5 (M.D. Fla. Dec. 29, 2017) (quoting *Cruz v. Underwriters at Lloyd's London*, 8:14-CV-1539-T-33TBM, 2014 U.S. Dist. LEXIS 105482, at *2 (M.D. Fla. Aug. 1, 2014); *see also Whitney Nat. Bank v. SDC Cmtys., Inc.*, No. 8:09-cv-1788-EAK-TBM, 2010 U.S. Dist. LEXIS 146296, at *3 (M.D. Fla. Apr. 1, 2010) (dismissing breach of contract claims because plaintiff failed to "allege the specific provision of the contract allegedly breached," and concluding claims were "examples of 'the-defendant-unlawfully-harmed-me' accusation that Iqbal warned against" (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009))).

In the newly amended complaint, Plaintiff points to specific provisions of the DAA that were allegedly breached. Specifically, Sections II(A)(6), III(D)(2)(d), IX(B), and IX(C). Firstly, Section II(A)(6) states "[w]e *may* follow or refuse to follow the agent's

5

instructions at any time, including *if we* suspect fraud or abuse on your account. . ." Christenson Decl., Ex. A. at 6 (emphasis added). Secondly, Section III(D)(2)(d) states that "[w]e *can* refuse to authorize any transaction when your card has been reported lost or stolen or when we *reasonably believe* there may be fraudulent, suspicious or illegal activity." *Id.* at 11 (emphasis added). Next, Section IX(B) states "[a]ny provision of [the DAA] that limits the bank's liability does not negate the bank's duty. . . to act in good faith and with reasonable care." *Id.* at 21. Finally, Section IX(C) states "[Chase] *may* decline or prevent transactions. . . [and] *may* refuse, freeze or delay any specific withdrawal, payment or transfer of funds to or from your account, or we *may* remove funds from your account to hold them pending investigation. . . [if] we suspect that you may be the victim of a fraud, scam or financial exploitation..." *Id.* at 21 (emphasis added).

All of the provisions that Plaintiff points to Defendant allegedly breaching contain unambiguously permissive language that does not obligate or require Defendant to act, as the Court previously found in its September 28, 2023, Opinion. *See* ECF No. 16. Defendant neither had a duty to carry out these provisions nor do these provisions go to the essence of the contract. *See Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. Dist. Ct. App. 2015) ("To establish a material breach, the party alleged to have breached the contract must have failed to perform a duty that goes to the essence of the contract and is of such significance that it relieves the injured party from further performance of its contractual duties.") Furthermore, regarding any allegations that Defendant materially breached the DAA by failing to reimburse Ms. Goodwin after Plaintiff reported unusual activity, Section III (D)(5) of the DAA unambiguously requires Plaintiff to report such discrepancies within 60 days after receiving the monthly bank statement, which Plaintiff did not do. *See* Christenson Decl., Ex. A. at 12 ("We must hear from you NO LATER than 60 days after we sent you the FIRST statement on which the error appeared.")

Plaintiff's argument that the DAA is unconscionable and therefore unenforceable is unavailing. "To succeed in claiming that a contractual provision is unconscionable, a party must demonstrate both procedural and substantive unconscionability. Procedural unconscionability addresses the manner in which the contract was entered, including consideration of facts such as the relative bargaining power of the parties and their ability to understand the contract terms. Substantive unconscionability, on the other hand, requires assessment of the contract's terms to determine whether they are so outrageously unfair as to shock the judicial conscience. Where the party alleging unconscionability establishes only one of the two prongs, the claim fails." *FL-Tampa, LLC v. Kelly-Hall*, 135 So. 3d 563, 567 (Fla. Dist. Ct. App. 2014) (citing *Zephyr Haven Health & Rehab Center, Inc. v. Hardin*, 122 So. 3d 916, 920 (Fla. 2d DCA 2013)). Plaintiff argues the DAA is a contract of adhesion and the provision requiring reporting of error within 60 days is "buried. . . in nearly 200 pages of single-spaced type," and is therefore procedurally unconscionable. Pl. Opp. at 20, ECF No. 24. On substantive unconscionability, Plaintiff argues that the DAA interferes with the statutory protections under FAPSA. *Id.* at 21. Plaintiff misses the mark on both fact and law. Firstly, the DAA, which Defendant attached to its Motion to Dismiss,

is only 25-pages long, not 200. *See* Christensen Cert. Ex. A. Secondly, the DAA contains a clearly labeled table of contents and the provisions are plainly stated. *Id.* Lastly, the DAA is not incompatible with FAPSA. FAPSA mandates that banks report when one "knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited. . . immediately report such knowledge or suspicion to the central abuse hotline." Fla. Stat. § 415.1034(1)(a). The relevant provision of the DAA requires customers to report errors within 60 days after receiving their monthly bank statement. *See* Christenson Decl., Ex. A. at 12. This provision is neither outrageously unfair nor does it shock the judicial conscience. Plaintiff has failed to allege unconscionability on either of the two prongs. As a result, Count One of Plaintiff's Amended Complaint is **DISMISSED WITH PREJUDICE**.

### B. Negligence

Count Two alleges the Defendant was negligent in failing to exercise ordinary care when processing debit and checking transactions on Ms. Goodwin's accounts due to her banking history of limited purchases and the Defendant's alleged knowledge of her status as a 94-year-old widow living alone. Am. Compl. at ¶¶ 95-109. Plaintiff newly alleges: (1) Defendant owed a duty of care to Ms. Goodwin via "Know Your Customer" laws; (2) Defendant had a duty to exercise ordinary care when processing debit and checking transactions; and (3) Defendant violated its duty to exercise good faith and ordinary care or satisfy its heightened duty to monitor Ms. Goodwin's account pursuant to FAPSA and "failed to effect federal laws and related internal policies requiring it to detect, report, and stop suspicious activity." *Id.* at ¶¶ 99, 101, 107.

Defendant argues Count Two should be dismissed because Plaintiff cannot allege any actionable duty for Defendant to reimburse unauthorized transactions or monitor accounts. *See* Def. Mot. to Dismiss, at 17. Specifically, Plaintiff improperly seeks to import tort duties where there is an existing contract between the parties. *Id.* Defendant also argues that under Florida law, there is no common law duty to prevent the misconduct of third persons. *See id.* at 18. Next, Defendant argues that it was not warned and had no reason to believe Ms. Goodwin was being exploited. *See id.* at 20-21. When first instances of unauthorized use of Ms. Goodwin's account was reported to Defendant, Defendant issued Ms. Goodwin a new debit card and therefore had no reason to believe that Ms. Goodwin would continue to both employ the son of the perpetrator of theft and grant him access to her accounts. *Id.* Lastly, Defendant argues Plaintiff's reliance on "Know Your Customer" laws and regulations are misplaced as they do not create any private right of action and were meant to enforce anti-money laundering and terrorism financing regulations. In opposition, Plaintiff argues Defendant failed to exercise ordinary and reasonable care when, after Ms. Goodwin put Chase on notice that Dennis Alexander and his son were defrauding her and Chase reissued a new debit card, Chase did not continue monitoring her account for additional fraudulent activity. Pl. Opp. at 5-6. Plaintiff also argues this Court improperly interpreted FAPSA via *Ginder v. Bank of Am. Corp.*, No. 6:14-cv-1271, 2015 U.S. Dist. LEXIS 25562, at *2 (M.D. Fla. Mar. 3, 2015). Lastly, Plaintiff argues Defendant

failed to follow "internal policies requiring it to detect, report, and stop suspicious activity in Dorothy's account." Am. Compl. at ¶ 107.

To state a claim for negligence under Florida Law, Plaintiff was required to prove four elements: (1) a duty requiring Chase to conform to a certain standard of conduct; (2) a breach of that duty by Chase; (3) a casual connection between the breach and an injury to Plaintiff; and (4) loss or damage to Plaintiff. *See Arberman v. PNC Bank, Nat'l Ass'n*, No. 23-10182, 2023 U.S. App. LEXIS 14361, at *9 (11th Cir. June 9, 2023); *Clay Elec. Co-op., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003). At issue here is the first element, Chase's alleged duty to Plaintiff. Under Florida law, "[d]uty exists as a matter of law and is not a factual question for [a] jury to decide." *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014) (quoting *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 503 (Fla. 1992)). As this Court previously noted in its September 28, 2023 Opinion, Chase did not owe Ms. Goodwin a baseline duty of care. Florida law does not require banking institutions to investigate transactions. *See Arberman*, 2023 U.S. App. LEXIS 14361, at *16 (11th Cir. June 9, 2023) (citing *Home Fed. Sav. & Loan Ass'n of Hollywood v. Emile*, 216 So. 2d 443, 446 (Fla. 1968)). Furthermore, the mandatory reporting provision of FAPSA does not create a private right of action. *See Martin v. Wood*, 648 F. App'x 911, 917 (11th Cir. 2016) ("[T]he APSA provides no civil remedy for violation of [the mandatory reporting] provision.") (citing *Mora v. S. Broward Hosp. Dist.*, 710 So. 2d 633, 633 (Fla. Dist. Ct. App. 1998) ("[A] violation of the reporting requirement . . . does not result in a civil cause of action."); *see also* Fla. Stat. § 415.1111 (explaining the circumstances under which a civil action may be brought pursuant to the APSA).

Florida law recognizes four sources of duties of care: "statutes and regulations, judicial interpretations of legislation, judicial decisions, and duties arising from the facts of a particular case." *Arberman*, No. 23-10182, 2023 U.S. App. LEXIS 14361, at *9 (11th Cir. June 9, 2023) (citing *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227-28 (Fla. 2010). "Florida courts permit proof of a statutory violation to serve as prima facie evidence of negligence because 'the standard of conduct or care embraced within such [a] legislative measure[ ] . . . represent[s] a standard of at least reasonable care which should be adhered to in the performance of any given activity.'" *Kohl v. Kohl*, 149 So. 3d 127, 132 (Fla. Dist. Ct. App. 2014) (quoting *Dusine v. Golden Shores Convalescent Ctr., Inc.*, 249 So. 2d 40, 41-42 (Fla. Dist. Ct. App. 1971)). "Although proof of a statutory violation will not overhaul the negligence cause of action by converting it into a case sounding in negligence per se, Florida courts do allow the showing of a statutory violation to establish the existence of a duty and a breach thereof." *Ginder*, 2015 WL 898595, at *2 (M.D. Fla. Mar. 3, 2015). FAPSA mandates that banks report when one "knows, or has reasonable cause to suspect, that a vulnerable adult has been or is being abused, neglected, or exploited. . . immediately report such knowledge or suspicion to the central abuse hotline." Fla. Stat. § 415.1034(1)(a). Here, although FAPSA does not create a private cause of action, a statutory violation of FAPSA can be a factual predicate of a viable common law negligence claim under Florida law. *See Regan v. Bank of Am., N.A.*, No. 23-80700-CIV-CAN, 2023 U.S. Dist. LEXIS 173505, at *17 (S.D. Fla. Sep. 27, 2023).

8

However, just like the Plaintiff in *Arberman v. PNC Bank, N.A.*, Plaintiff here has failed to sufficiently allege that Defendant owed Ms. Goodwin a duty of care and had a reasonable suspicion to suspect that Ms. Goodwin was being exploited. No. 23-10182, 2023 U.S. App. LEXIS 14361, at *12 (11th Cir. June 9, 2023). The plaintiff in *Arberman* alleged one bank employee grew so suspicious of the plaintiff's inconsistent transactions that the employee approached plaintiff and inquired "about what was going on." *Id.* Despite this, the 11th Circuit found that "[t]he suspicions of one employee without any knowledge of a fraudulent scheme cannot save Arberman's Amended Complaint from its defect. She did not sufficiently allege that PNC owed her a duty of care to monitor her own transactions." *Id.* Plaintiff's complaint is void of any facts that would reasonably imply the bank was aware of should have been aware of plaintiff's alleged exploitation resulting from her age. Similarly, Plaintiff's reliance on *Regan v. Bank of Am., N.A.* and *Ginder v. Bank of Am. Corp.* are inapposite. *See* No. 23-80700-CIV-CAN, 2023 U.S. Dist. LEXIS 173505 (S.D. Fla. Sep. 27, 2023); *see also* No. 6:14-cv-1271, 2015 U.S. Dist. LEXIS 25562 (M.D. Fla. Mar. 3, 2015). In *Regan*, the Plaintiff alleged that a trusted financial advisor opened a bank account in Plaintiff's name and regularly wrote "large checks to himself, for personal use, from the [Plaintiff's] account, which he then deposited into his own account." Given those facts, the District Court held that plaintiff found that the defendant, Bank of America, "knew or should have known that the [plaintiff was] being exploited based on the fact that their account was opened by a purported POA holder who regularly wrote large checks from the [plaintiff's] account to his own account at [Bank of America]." In *Ginder*, the Court found that in addition to failing to investigate at least twenty instances of fraud involving the eighty-one-year-old plaintiff there, the bank eventually had *actual knowledge* of exploitative conduct by third parties and yet still failed to properly safeguard the plaintiff and her funds.

Here, Plaintiff argues Chase was on notice of previous fraudulent activity in November of 2019 when it canceled Ms. Goodwin's card and issued a new one and, therefore, should have been alerted when Ms. Goodwin was again a victim of fraud. However, the only knowledge of fraud Chase had was in November of 2019 when Ms. Goodwin discovered Dennis Alexander was misusing her card, filed a police report, and reported it to Chase. Chase then cancelled her debit card and issued a new one. Chase, therefore, had no actual knowledge, no reason to believe, and no duty to investigate, any alleged ongoing fraudulent transactions. Without more, Plaintiff's conclusory allegations do not trigger a plausible inference that Defendant Chase bank had "reasonable cause to suspect" that a vulnerable adult was being exploited as required to trigger the APSA's statutory duties. Fla. Stat. § 415.1034(1)(a); *see Bahmann v. Wells Fargo Bank, N.A.*, No. 6:23-cv-1303-PGB-EJK, 2023 U.S. Dist. LEXIS 152507, at *8 (M.D. Fla. Aug. 29, 2023). As a result, Defendant's motion to dismiss Count Two is **GRANTED** and Count Two is **DISMISSED WITH PREJUDICE**.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**. An appropriate order follows.

WILLIAM J. MARTINI, U.S.D.J.

Date: April 18, 2024

10